Wilson, J.
This was an action to recover on an account for cattle claimed to have been sold to the plaintiffs in error, who were defendants in the trial court, by Eveline Parker, since deceased. The suit has been pending for more than sixteen years. During its progress, it once made its appearance in the supreme court, a judgment in favor of the defendants being there reversed by that tribunal. Parker v. Cochrane et al., 11 Colo. 363. The material facts necessary to a proper understanding of the original dispute between the parties are there set forth, and such additional facts as have occurred in the progress of the case since that time and as are necessary to the determination of the issues now presented, will be stated in the course of tins opinion. Defendants in their brief allege at the outset that the consideration of only four assignments of error is necessary, because all other controverted questions are involved in the four. We will consider them in the order in which they are presented and discussed.
1. It appears that the original plaintiff, Mrs. Parker, died during .the pendency of the suit in the supreme court, and it is claimed, prior to the final judgment of reversal by that court. Upon being remanded, various proceedings were had in regard to the substitution of party plaintiff, filing of additional pleadings, etc., which we will hereafter notice, but the issues were finally made-up, and the case became ready for trial in *171 March, 1896, about eight years after the judgment in the supreme court. At the April term of the court, 1896, the case was continued at the costs of defendants. On the first day of the next term of the court, November 9, 1896, the court upon its own motion set the cause for trial on November 17. On this last mentioned day, the defendants appeared and filed a motion to set aside the order setting the case for trial on that day, and also a motion for a continuance of the cause. On the same day, both motions came on to be heard, defendants being represented by their counsel, and both were sustained, and thereupon the court of its own motion continued said cause to November 27, 1896, and set that day at 8 o’ciock in the afternoon for the beginning of the trial. After-wards, on November 27, defendants again appeared by their counsel, and presented a motion supported by affidavit, to vacate the order setting the cause for trial on that day, and also a motion for a continuance. The ground alleged in support of the first named motion was that the order of the court on November 17, setting the cause for trial on the 27th, had been made without any notice thereof having been given to these defendants, and that the trial on said day would be to the great injury of defendants. The facts upon which it was claimed that a trial at that time would he to the injury of defendants are substantially those set forth in the affidavits for a continuance, and will be noticed hereafter. We fail to see wherein defendants could have been prejudiced by want of notice, when the order was made on November 17, because their counsel were present. If notice were required at all for the setting of a case for trial, its sole object and purpose was attained by the presence of defendants’ counsel. If, however, counsel intend to maintain that the court had no right to make an order of its own motion, it not appearing- from the record that any application therefor was made by the other party, we think that their position cannot be sustained. The fixing of a time for the trial of a cause is not an act required or prescribed by either code or statute, and it is clearly within the inherent powers of the court of its own motion to take *172 such steps, and make such orders as may be necessary to the dispatch of its business, and the disposition of causes pending on its docket. Trinidad v. Simpson, 5 Colo. 65. Of course it is within the province of a court to require by rule that if there should be an application for the setting of a cause for trial, that notice of this application should be given, but no such rule is shown here. In many counties of the state, where terms are infrequent and where there is not more than enough business to occupy the court for a few days, such a rule even would be inexpedient and inapplicable. Moreover, the case having been set for trial on the 17th, and the application for a continuance being only for a time and not for the term, the order of the court allowing the continuance to November 27, was in itself without any further order the fixing of the time for its trial. The affidavits do not show any abuse oE discretion by the court, nor that any injury was caused to or suffered by the defendants by reason of such order. The case of Lux v. McLeod, 19 Colo. 465, does not go to the extent claimed by defendants, and is not applicable to this case. In that, the court did not say that the setting of a cause fox-trial by the court oxx its owxx motioix without xxotice to defendant was erroneous. It said, conceding this to be the case, the appellant had failed to show wherein he was prejudiced by such actioxx. In this case, the defendants had notice, because they were present by their counsel when the ox-der was made, aixd they have xxot shown that they were prejudiced by such order.
2. The second assignment of error is predicated upon the refusal of the court to continue the cause upon the application of defendants on November 17. Applications for continuances are largely addressed to the discretion of the court, and ordinarily there must appear to have beexx some abuse of discretion before an appellate court will oxx this ground alone reverse a cause. The application here w-as based upon the absexxce of oixe of the parties defendant. It is the duty of a party to a suit to take notice of the term when his cause may come up for trial, axxd to attend if he so desires. We do xxot *173 mean to say, of course, that in no case should a cause be continued, because of the absence of a party, but in such case it should first clearly appear that the party is necessarily and unavoidably absent, and also if it is urged that he is a witness in the cause, such further facts should certainly be set forth as are required in an application for continuance on the ground of the absence of a witness who is not a party. Under the circumstances of this case, we do not think that sufficient excuse was given for the absence of the party. The court had already granted one continuance, from the 9th to the 17th, on an application setting forth the same facts, and it seems that this should have been sufficient when the only excuse for absence was private business. But however this may have been, the affidavits in support of the application were wholly insufficient in other material respects. It was not shown that there were not other witnesses by whom the same evidence could have been produced as was expected from the absent defendant. The contrary affirmatively appeared, as it was set forth in the affidavit as the sole and predominating reason in favor of a continuance “ that there will be a conflict of testimony as to the matters and things above mentioned, and that it is absolutely necessary that the said Dowling be present as a witness to testify on behalf of said defendants, and produce a preponderance of evidence on behalf of the said defendants.” The implied assumption that •the preponderance of evidence would be dependent upon the number of witnesses produced by each side is not in accord with the authorities or with the opinions usually entertained in this respect, and we would hesitate to say that any court would be justified in granting a-continuance solely upon the ground that in the opinion of a party it was necessary to have the testimony of a witness in order to create a preponderance of evidence in his favor. Such an allegation would in any event be a mere conclusion of the pai’ty making the affidavit, the correctness of which the court could by no possibility determine. The court did not err in denying the motion for a continuance.
*174 3. The third assignment of error discussed is the sustaining of the demurrer to the third defense of defendants’ amended answer. This defense was in substance that at the time the supreme court rendered its judgment of reversal, the plaintiff was dead, that therefore its judgment was void, and the original judgment rendered by the district court in favor of defendants was in full force and effect. It will be seen that this is a collateral attack on the judgment of another court. A collateral attack on a judgment is in its general sense any proceeding which is not instituted for the express purpose of annulling, correcting or modifying such decree. The fact that the parties are the same and that the defendants seek to attack the decree by allegations in their answer, cannot change the rule or make the attack any the less a collateral one. It is well settled that judgments of a court of competent jurisdiction are not subject to collateral attack, unless they are void, and by void is meant that they are an absolute nullity. In support of this we need refer to no authorities outside of our own state. Brown et al. v. Tucker, 7 Colo. 30. The question then arises, conceding that the original plaintiff was dead at the time when the supreme court rendered its judgment, and that there had been no substitution of her administrator or other representative as a party, was the judgment void, or was it only voidable, and hence subject only to attack in the manner prescribed by law in such case ? The question has frequently arisen, and been decided in many courts, and there is some conflict of authority, but the great weight of authority is in favor of the doctrine that such a judgment is voidable only, and not void. Coleman v. McAnulty, 16 Mo. 173; Claflin v. Dunne, 129 Ill. 247; Beard v. Roth, 35 Fed. Rep. 399; Yaple et al. v. Titus et al., 41 Penn. St. 195; Reid v. Holmes, 127 Mass. 326; Morrill v. Morrill et al., 20 Ore. 96 ; Freeman on Judgments, § 140; Black on Judgments, § 200; Stocking v. Hanson, 22 Minn. 547.
In the last cited case, quoting from Hayes v. Shaw, 20 Minn. 405, the court said: “ While a court ought to cease to *175 exercise its jurisdiction over a party at Ms death, the neglect to do so is an error to be corrected by some proceeding in the action in which the error occurs, and a judgment rendered after a party’s death, although erroneous, is not on that account to be attacked in a collateral action. In other words, the judgment is voidable if properly assailed, but not void.” The question has most generally arisen in cases wherein judgment was rendered against the defendant after his death. If the death of defendant will not render the judgment void, no reason is perceived why the death of the plaintiff should have that effect. Coleman v. McAnulty, supra. Indeed, there would seem to be less reason for holding the judgment void in the latter case than in the former, because the defendant, against whom the judgment was rendered, was alive, and therefore enabled to employ every legal means to protect himself.
Defendants urge, however, that all authorities agree that a judgment is void where it appears that the court was without jurisdiction to render it, and that upon the death of the plaintiff in this case the jurisdiction of the supreme court was at an end. Admitting this, before such a judgment is subject to a collateral attack however, it must appear from the record itself that the court in pronouncing it acted without jurisdiction. Hughes v. Cummings, 7 Colo. 208; G. W. M. Co. v. W. of A. M. Co., 14 Colo. 103; Brown v. Wilson, 21 Colo. 309. In the case at bar, it is not disputed that the supreme court had originally complete jurisdiction, both of the subject-matter and of the parties. In such event, our own supreme court has said: “ The decided weight of authority is to the effect that when jurisdiction has been obtained by the service of process, actual or constructive, all subsequent proceedings are exercise of jurisdiction, and though erroneous, they are not void, but voidable only, and not subject to collateral attack.” Brown et al. v. Tucker, supra. It would be an anomalous doctrine to hold that in any case the solemn judgment of the highest judicial tribunal in the state could be impeached, disregarded and set aside by a court of inferior jurisdiction, but *176 much more extraordinary would it be to so hold when nothing appeared upon the record in the supreme court to question its full and complete jurisdiction to render the judgment which it did. The court did not err in sustaining the demurrer to this defense set up in defendants’ amended answer.
4. The fourth error relied upon and discussed by defendants was the refusal of the court to sustain the motion of the defendants for judgment on the fourth defense set up in their answer, which was the defense of the statute of limitations. For a proper understanding of this defense, and of the grounds upon which the motion was based, a few facts pertaining to the history of the pleadings are necessary to be stated. The original action in this case was commenced by Eveline Parker on July 25, 1882, upon claim for a debt alleged to have accrued about July 1, 1882. The judgment of reversal in the cause by the supreme court was of date May 11, 1888, and a remittitur was issued September 7,1889. On October 14,1889, in the trial court, William C. Parker filed a petition suggesting the death of Eveline Parker, and alleging in substance that he was her surviving husband, and that by her last will he had been made the sole devisee and legatee of all the property of deceased; that no executor had been named in the will, and no administrator had been appointed, and that there were no debts whatever due by the estate; and asking that he have, as such devisee and legatee, leave to be entered as plaintiff and permitted in such capacity to prosecute said action in his own name, and that he be allowed to file supplemental pleadings therewith presented. Thereupon an order was made by the court granting leave “ to the plaintiff to file the supplemental complaint, making such changes as to the party plaintiff as he may be advised in order to continue this action in the name of the legal successors of the deceased plaintiff.” Thereupon, he filed what was termed a supplemental complaint, entitling it in the name of “ William O. Parker, Plaintiff.” In this pleading, the same facts were substantially set forth as in the petition above referred to, and in addition the plaintiff, William C. Parker, alleged that *177 the indebtedness sued for in the action belonged to him, and that he was entitled to maintain this action, and to have and recover of and from the defendants the said indebtedness, and praying judgment, etc. To this defendants interposed a demurrer upon the ground that William C. Parker had no legal capacity to prosecute said suit, and also that the complaint did not state facts sufficient to constitute a cause of action. The plaintiff confessed the demurrer, and took leave to file an amended supplemental complaint, which was done within the time fixed, on January 14, 1890. This was entitled, “William C. Parker, substituted for Eveline Parker, deceased, Plaintiff, vs. Frank Cochrane and N. Dowling, partners, &c. Defendants.” This amended complaint was substantially like the first, except that it contained an allegation omitted from the first that said Parker was the sole devisee and legatee under the will of Eveline Parker, deceased. Following this, defendants having failed to plead within the time required, a default was entered against them. Within a few days thereafter, defendants filed a demurrer to the amended supplemental complaint, upon the same grounds as that to the first. Thereafter, the parties all appearing in open court, by agreement of parties the default was set aside, and the defendants took leave to answer, and hence the demurrer was waived. Answer being filed, the issues were made up, and the case came on regularly for trial in October, 1890. Plaintiff having rested, the defendants moved to nonsuit, and the court being “ about to order such nonsuit, the plaintiff asked leave to withdraw a juror, and that the complaint herein be amended by substitution of the administrator with will annexed, of Eveline Parker, a former plaintiff herein.” Leave was granted, and this was done. Thereafter an amended complaint was filed, entitled “ William C. Parker, Administrator, with will annexed of the Estate of Eveline Parker, deceased, Plaintiff, vs. Frank Cochrane and N. Dowling, partners, &c. Defendants.” Defendants filed answer to this complaint; plaintiffs replied, and the case coming to trial upon the issues so framed, the verdict of the jury and the judgment were in favor of plain *178 tiff. The contention of defendants is that upon and by reason of the attempt of William C. Parker to institute and maintain the suit in his own name, the action originally instituted by Eveline Parker was abandoned and abated, that the pending action was therefore a new and independent one, and hence the statute of limitations could properly be pleaded. This position of counsel cannot be successfully maintained for several reasons. For one, the failure of defendants to object to plaintiff’s capacity to sue when their default was set aside and they took leave to answer, and also their failure to object to the order of court when the juror was withdrawn and granting leave for the filing of an amended complaint with the substitution as plaintiff of William C. Parker, administrator, with will annexed of Eveline Parker, may be said to have been such a waiver of objection as to have conferred upon the court jurisdiction of the parties, the court having unquestionably jurisdiction of the subject-matter. Smith et al. v. District Court, etc., 4 Colo. 238. Again, there can be no question but that the cause of action survived to the legal representative of Mrs. Parker, and was subject to be continued on motion in the name of such representative. Code, sec. 15. The code fixes no particular time within which this motion should be made. At all times the claim of plaintiff was based upon the same cause of action, and his attempt to substitute himself as sole legatee and devisee for the deceased plaintiff, cannot be considered otherwise than as being based upon the ground that he claimed to be the legal representative of the deceased. If the court was without power to make the order granting this leave, then the order .certainly had no effect upon the original action. Parker then never got into the case at all under such an order, and the action remained as it was before, subject to be continued on motion by the proper legal representative of the deceased.
Defendants insist however that under Williams v. Carr, 4 Colo. App. 366, the action did abate. In this case it was said: “ Admitting that the foreign executors could not be substituted and prosecute the suit, and that their substitu-
*179 tion was irregular, such proceeding could not abate the suit nor in any way prejudice the defendants unless such irregularity was persisted in, and a refusal to substitute the proper party.” Such was certainly not this case. The plaintiff did not refuse to substitute the proper party, but on the contrary did so, when the precise point seems to have been raised on the motion for a nonsuit during the trial hi October, 1890.
We think that there was no error in this respect, and having held that there was none in the other assignments discussed by defendants, the judgment will be affirmed.

Affirmed.